Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On the date of the injury giving rise to this claim, an employment relationship existed between plaintiff and defendant.
3. Defendant is duly qualified as a self-insured, with Constitution State Service Company acting as its servicing agent.
4. Plaintiff's average weekly wage, including overtime and allowances, was $198.40. This yields a compensation rate of $132.27.
5. Plaintiff sustained an admittedly compensable injury by accident to her back and right leg on 5 June 1998. Defendant admitted liability for plaintiff's claim pursuant to a Form 60 filed with the Industrial Commission on or about 2 July 1998.
6. In addition to the deposition transcripts and the exhibits attached thereto, the parties stipulated into evidence in this matter 135 pages of plaintiff's medical records. In addition, plaintiff introduced and the Deputy Commissioner admitted into evidence plaintiff's exhibits one and two, letters from case manager Debra Rogers dated 1 October 1999 and 9 November 1999, respectively.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On the date of the hearing in the matter plaintiff was 43 years old and residing in New Bern. Plaintiff completed high school but has no other formal education or training. Plaintiff's previous employment history includes managing a fast food restaurant, running errands for a physician, farm work, and cashier work in department and grocery stores.
2. Plaintiff was hired by defendant in August 1997. Defendant, a retail store, was in the process of preparing to open to the public. Plaintiff's first employment responsibilities with defendant involved helping to put the store merchandise together and stocking the shelves. Defendant opened its door to the public in October 1997, and plaintiff became a cashier, working approximately thirty-two hours per week.
3. On 5 June 1998, in the course and scope of her employment, plaintiff slipped on the freshly waxed floor while carrying items in both hands and tucked under her arm. When plaintiff fell, she hit the inside of her right knee and fell backwards onto her buttocks. Plaintiff felt immediate pain in her right knee and low back. Plaintiff testified that the pain in her lower back felt like she had put her finger in a plug and three bolts went through her back. Plaintiff reported to the emergency room at Craven Regional Medical Center for treatment and was diagnosed with a right knee contusion and back strain. Defendant admitted liability for plaintiff's injury by accident in a Form 60.
4. Upon referral from the Craven Regional Medical Center, plaintiff presented to Dr. Donald Bright on 10 June 1998. Dr. Bright treated plaintiff with medication and recommended that she return to work in approximately one week. Plaintiff did not return to work at that time. On 10 July 1998, plaintiff returned to Dr. Bright upon request of defendant. Dr. Bright treated plaintiff with injections and ordered an MRI which was performed on 11 July 1998. The MRI revealed no disc protrusion or rupture, but an annular tear was noted. Dr. Bright prescribed a muscle relaxant and a course of physical therapy which plaintiff underwent. Dr. Bright released plaintiff to return to work on 4 September 1998. Plaintiff did not return to work at that time.
5. On or about 2 October 1998 defendant filed a Form 24 application seeking to terminate plaintiff's ongoing total disability benefits. Plaintiff responded to the Form 24 application, and an informal, administrative, telephonic hearing was held. By Administrative Decision and Order filed on 17 November 1998, defendant was permitted to terminate plaintiff's compensation as of 14 October 1998 on the grounds that plaintiff's release to return to work without restrictions rebutted the presumption of her ongoing total disability (the Full Commission notes that since that time, the N.C. Court of Appeals has ruled that payment of compensation pursuant to a Form 60 does not provide plaintiff with a presumption of disability. Sims v. Charmes/Arby's Roast Beef, (No. COA99-1402, N.C. App., 6 February 2001)). Plaintiff has not received any indemnity compensation from defendant since that time. Plaintiff returned to work on 23 November 1998 in a modified, light duty job at diminished wages.
6. For several months following her admittedly compensable injury by accident, plaintiff occasionally reported to the emergency department at Craven Regional Medical Center. Plaintiff asked to be seen by Dr. Brenda S. Waller of the North Carolina Spine Center, and Dr. Evans at Beach Care Urgent Medical Care Center referred her to Dr. Waller.
7. Plaintiff began treating with Dr. Waller, who specializes in physical medicine and rehabilitation on 29 September 1998. Dr. Waller was not authorized as plaintiff's treating physician; however, Dr. Bright noted that he welcomed any second opinion. Dr. Waller's impression was "lumbar degenerative disc disease with acute annular tear." She referred plaintiff to physical therapy and instructed her to discontinue use of all narcotics and return for evaluation in 2 weeks. On 13 October 1998, Dr. Waller took plaintiff out of work altogether, but continued to evaluate her work capability on subsequent visits. Dr. Waller indicated that she discussed the potential for light duty work with plaintiff on 27 October 1998 but the medical note does not indicate that plaintiff was released to return to work at that time. On 16 November 1998 Dr. Waller released plaintiff to return to work for modified, temporary duty with "adequate restrictions," and plaintiff returned to work for defendant on 23 November 1998. Dr. Waller did not define "adequate restrictions." Plaintiff initially returned to work as a switchboard operator, but soon thereafter was placed back in the cashier position.
8. The position of cashier required plaintiff to stand and handle whatever merchandise was brought by a customer to the register for checkout. Many of the individual items available for purchase at defendant's store exceeded 20 pounds, including televisions, microwaves, and furniture. Further, the bags plaintiff handled containing multiple items purchased by a customer also often weighed more than 20 pounds. Due to continuing pain, plaintiff was unable to work full days as a cashier, and often left work after less than an hour.
9. Dr. Bright discharged plaintiff from his care on or about 23 December 1998, indicating that he did not need to see her again. On that date, Dr. Bright noted that physical therapy had indicated that plaintiff's return to work was at light duty.
10. Due to her inability to perform the functions of her job as a cashier, plaintiff stopped working for defendant on 26 December 1998. On 15 January 1999 Dr. Waller again took plaintiff totally out of work.
11. Plaintiff continued to be treated on a regular basis with Dr. Waller. From February through April 1999, plaintiff continued to complain of central and low back pain, radiating into the posterior lateral buttocks and occasionally into her legs. As a result of plaintiff's lack of advancement under Dr. Waller's care, in July 1999, Dr. Waller referred plaintiff to Dr. Paul Suh for consideration of possible surgical intervention. In August 1999 Dr. Suh recommended a decompression and fusion surgery at L5-S1 after a repeat lumbar discography showed an intact disc but symptomatic degenerative disc disease at that level that had been unresponsive to physical therapy. As of June 2000, and at her own election, plaintiff had not undergone the recommended surgical procedure.
12. Plaintiff was seen on a second opinion basis at defendant's direction by Dr. Fulghum, a neurosurgeon, on 20 August 1999. Dr. Fulghum found no neurological abnormality but believed that plaintiff was engaged in symptom magnification. Dr. Fulghum subsequently reviewed all of plaintiff's previous tests and studies, and this review showed only a very mild scoliotic curve convex. Instead, Dr. Fulghum believed that plaintiff's problems more likely stemmed from deconditioning as a result of a prolonged pain problem. Dr. Fulghum ordered work-hardening to attempt to recondition plaintiff, and it was his opinion that in the meantime, plaintiff continued to be capable of performing four hours a day of cashiering work with a 15 pound lifting restriction, when she was not involved in the work-hardening. Plaintiff was unable to attempt work on days she was involved in work hardening because the program and drive combined took 6 hours and her activities continued to be limited by pain.
13. Between 30 September and 4 October 1999, plaintiff underwent a preliminary Functional Capacity Evaluation ordered by Dr. Fulghum to determine a proper work hardening program. After completion of work hardening a second FCE was conducted on 23 November 1998 to assess plaintiff's improvement following work hardening. According to the results of the second FCE, plaintiff could bend, squat, and sit occasionally, and stand, walk, and alternately sit and stand continuously. She was to avoid lifting from the floor, and could lift 20 pounds occasionally and 10 pounds frequently.
14. On 24 November 1999, plaintiff met with Dr. Fulghum to review the FCE. Dr. Fulghum recommended based on the FCE that plaintiff return to work with a lifting restriction of 20 pounds beginning four hours per day and increasing one hour per day each subsequent week until she was working eight hours per day. Based upon Dr. Fulghum's schedule, plaintiff would have been working 8 hours per day by 28 December 1999. He allowed plaintiff to continue using her TENS unit for one month. He recommended that a stool be provided so plaintiff could sit as needed. The FCE indicated that plaintiff could bend occasionally and never lift floor to knuckle height. On 24 November 1999, Dr. Fulghum released plaintiff from his care, indicating that she would be at maximum medical improvement within a month and would retain no permanent impairment.
15. The Full Commission assigns no weight to either Dr. Fulghum's prediction of maximum medical improvement or his assessment of 0% permanent partial impairment.
16. In August 1999 defendant hired a medical case manager, Debra Rogers, to assist in the coordination of plaintiff's medical care. Ms. Rogers helped to arrange plaintiff's evaluation with Dr. Fulghum, and then to coordinate plaintiff's work-hardening program. Prior to completion of work hardening, Ms. Rogers attempted to facilitate plaintiff's return to work with defendant. Ms. Rogers corresponded with a team leader at defendant-employer's business and inquired as to appropriate job availability. Thereafter, a job description of a modified cashier position, which essentially falls within the restrictions set forth in the Functional Capacity Evaluation and which also included the provision that defendant would "attempt to provide light duty to meet any restrictions of the MD," was forwarded by defendant to Ms. Rogers. Ms. Rogers then forwarded the description to Dr. Fulghum for review. While Dr. Fulghum did not specifically approve or disapprove this job description, he did indicate that plaintiff was capable of returning to work within the restrictions set forth in the Functional Capacity Evaluation.
17. The Full Commission finds that the job of cashier as offered by defendant in November 1999 in an "attempt to provide light duty to meet any restrictions of the MD," was so modified that it could not be considered as indicative of plaintiff's ability to find employment and earn wages in the general marketplace.
18. On 16 June 2000, Dr. Waller released plaintiff from her care, finding that plaintiff was at maximum medical improvement from a non-surgical standpoint. Since plaintiff has elected not to proceed with surgery, she was at maximum medical improvement as of 16 June 2000. Although Dr. Waller had not seen the FCE results or had any contact with plaintiff's other treating physicians, upon her release of plaintiff, Dr. Waller felt that plaintiff was capable of working with restrictions, and encouraged plaintiff to remain as physically active as possible. Plaintiff has not made reasonable efforts to find suitable employment since her release to return to work by Dr. Waller. Therefore, plaintiff has failed to show continuing disability after 16 June 2000.
19. Plaintiff has not worked in any capacity since attempting to return to work for defendant during the period from 23 November 1998 through 26 December 1998.
20. Upon her release of plaintiff, Dr. Waller assigned plaintiff a 25% permanent partial impairment to her back as a result of the admittedly compensable injury by accident on 5 June 1998. Dr. Waller testified that the rating was based upon a chart that was developed by the medical director of the North Carolina Spine Center, which in turn was based upon the AMA guidelines for disability. The Full Commission gives no weight to the rating as assigned by Dr. Waller. The issue of whether plaintiff has any permanent partial disability is reserved for subsequent determination.
21. Plaintiff's ongoing problems with her back after 5 June 1998 are causally related to the admittedly compensable injury by accident that occurred on that date.
22. After her attempt to return to work, plaintiff again became totally disabled within the meaning of the Workers' Compensation Act as of 15 January 1999, when Dr. Waller took plaintiff out of work after her unsuccessful trial return to work. Plaintiff was totally disabled within the meaning of the Act from 15 January 1999 through 16 June 2000, the date she reached maximum medical improvement and was able to return to work with restrictions.
23. On or about 10 May 1999 plaintiff filed a motion with the Commission for a change in her treating physician. Plaintiff sought to change her authorized treating physician to Dr. Waller from Dr. Bright. Plaintiff's motion was denied by administrative Order of a Deputy Commissioner (without hearing) dated 9 July 1999. Dr. Bright had released plaintiff from his care on 23 December 1998, and Dr. Waller had been treating plaintiff for the previous six months. Plaintiff's request for a change in treating physician was timely and for good cause shown, and is hereby granted by the Full Commission retroactively to 24 December 1998. The 9 July 1999 Order to the contrary is hereby reversed.
24. Because the Commission has given no weight to the permanent partial impairment ratings assigned to her by Drs. Fulghum and Waller, plaintiff is in need of a third evaluation with respect to her permanent impairment, if any, or another evaluation by Dr. Waller following Commission guidelines.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following additional:
 CONCLUSIONS OF LAW
1. On 5 June 1998, plaintiff suffered an injury by accident in the course and scope of her employment when she slipped on a freshly waxed floor, fell and injured her back. As a result of her injury by accident, plaintiff became totally disabled and is entitled to indemnity compensation for her injury. Plaintiff is entitled to temporary total disability from 6 June 1998 through 16 June 2000, except for the period from 23 November to 26 December 1998 when she returned to restricted, light duty work earning diminished wages. N.C. Gen. Stat. § 97-2.
2. Plaintiff is entitled to temporary partial disability compensation based upon the difference between her pre-injury wages and those wages actually earned during her trial return to work from 23 November 1998 through 26 December 1998. N.C. Gen. Stat. § 97-30.
3. Upon plaintiff's unsuccessful trial return to work she was again totally disabled and entitled to total disability compensation beginning on 15 January when Dr. Waller took her out of work. N.C. Gen. Stat. §§ 97-2(9) and 97-29. This total disability is causally related to plaintiff's admittedly compensable injury by accident.
4. Plaintiff reached maximum medical improvement on 16 June 2000 and since that time has been capable of working with restrictions as determined by the Functional Capacity Evaluation. Plaintiff has not made any effort to obtain suitable employment and has not proven continuing disability.
5. Plaintiff's treatment with Drs. Waller and Suh was appropriate and was reasonably required to effect a cure or give relief. Further, as of 23 December 1998, plaintiff was released by her treating physician and defendant offered no other option. Plaintiff's request to have Dr. Waller designated as her treating physician on 10 May 1999 was timely and for good cause shown should be granted. N.C. Gen. Stat. § 97-25.
6. The Full Commission has given no weight to the permanent partial impairment ratings offered by Drs. Waller and Fulghum. For these reasons, plaintiff is entitled to get a third opinion with respect to an appropriate impairment rating, if any, or an opinion from Dr. Waller following Commission guidelines. N.C. Gen. Stat. § 97-27. If an opinion is to be obtained from a new physician, the evaluation shall be conducted by a physician who is mutually agreeable to both parties, after the physician has had an opportunity to review all of plaintiff's past medical notes and diagnostic test results.
7. If as a result of this third opinion evaluation plaintiff is assigned a permanent partial impairment rating which complies with Industrial Commission guidelines, this rating may be paid through a Form 26 Supplemental Agreement for Payment of Compensation. N.C. Gen. Stat. § 97-31(23).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD and ORDER
1. Defendant shall pay plaintiff temporary total disability compensation in the weekly amount of $132.27 beginning 6 June 1998 and continuing through 16 June 2000, except for the period from 23 November 1998 through 26 December 1998. This compensation has accrued and shall be paid in a lump sum. This compensation is subject to the attorney's fee approved below.
2. Defendant shall pay to plaintiff temporary partial disability in the amount of 66% of the difference between plaintiff's pre-injury wages and the wages she earned during her trial return to work from 23 November 1998 through 26 December 1998. This compensation has accrued and shall be paid in a lump sum. This compensation is subject to the attorney's fee approved below.
3. The parties shall have 30 days from the date of this Award to agree on a physician to provide an independent assessment of plaintiff's continuing disability resulting from her injury by accident if they do not agree to another rating by Dr. Waller. Should the parties be unable to decide on a physician, the Industrial Commission shall appoint one.
4. Defendant shall pay for all reasonable and necessary past and future medical treatment related to plaintiff's injury by accident, which specifically includes past and future evaluations and treatment by Drs. Waller and Suh and any diagnostic tests and physical therapy ordered by these physicians.
5. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the indemnity compensation awarded plaintiff herein. Accordingly, defendant shall deduct one-fourth of the amounts owed to plaintiff in paragraphs 1 and 2 of this Award and shall forward this amount directly to plaintiff's counsel of record. Further, counsel for plaintiff would also be entitled to one fourth of any award entered pursuant to a permanent partial disability rating.
6. A determination of what further disability compensation may be owed to plaintiff (if any) is reserved for subsequent determination after a rating is given following Industrial Commission guidelines.
7. Dr. Waller is hereby designated as plaintiff's treating physician as of 24 December 1998, and the 9 July 1999 Order denying plaintiff's motion is reversed.
8. Defendant shall pay the costs of this action.
This the ___ day of August, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER